**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LETONYA HUNTER, | : |
| | : |
|     Plaintiff, | :  Case No. _____ |
| | : |
| v. | : |
| | : |
| GENERAL MILLS OPERATIONS, LLC, | : |
| | : |
|     Defendant. | : |

## COMPLAINT

Plaintiff is a putative class member and unnamed plaintiff in separate class action litigation pending in this Court, Case No. 1:24-cv-02409-MLB-JKK. Pursuant to the parties' consent Omnibus Management Consent Order in that case (Doc. 36), Plaintiff hereby files her known ripe claims. Plaintiff worked for General Mills in the East Plant beginning in January 2023 until she was sent home and not allowed to continue working following a disabling work injury.

## JURISDICTION AND VENUE

### 1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the

protections of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2.

Plaintiff asserts claims under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

3.

Pursuant to 28 U.S.C. § 1391(b), § 1391(c), and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court.  *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

**PARTIES**

4.

Plaintiff is a Black female and employee of Defendant who worked at General Mills' manufacturing facility in Covington, Georgia, from January 2023

until she was denied an accommodation following a work injury in July 2024; she has not been permitted to work for Defendant since December 2024.

5.

Plaintiff is a citizen of the United States and resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

## ADMINISTRATIVE PROCEEDINGS

7.

Defendant is a covered employer under Title VII.

8.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9.

The EEOC has not issued Plaintiff a Notice of the Right to Sue ("NRTS") against Defendant yet; however, Plaintiff's § 1981 race discrimination case does not require administrative exhaustion and is, therefore, ripe to file.

10.

According to Defendant, Plaintiff's "suggestion that [she needs] to wait for [an] NRTS letter [would] ignore[ ] the case law of this circuit providing numerous options to properly allege and preserve Title VII claims without an NRTS letter." (*Davis et al. v. General Mills*, 1:24-cv-02409-MLB-JKL, Doc. 25 at 9.) Defendant's argument applies equally to ADA claims as they require the same administrative exhaustion as Title VII claims.

11.

This suit is timely, appropriate, and valid in all respects.

## STATEMENT OF FACTS

12.

Plaintiff, a Black female, was hired by Defendant in January 2023.

13.

Plaintiff worked at the East Plant of Defendant's Covington facility on Lines 1, 2, and 6.

14.

Around December 2023, Plaintiff applied for a Logistics Scheduling position after the Logistics Manager, a Black female, encouraged her to apply.

15.

A less-qualified white male, Barrett Vaughn, was selected for the position.

16.

Plaintiff was denied the role even though it required six years of experience, and she had ten years of experience in that role at another large company.

17.

The Logistics Manager who encouraged Plaintiff to apply for the Logistics Scheduling position expressed that she did not understand why she was not qualified for the position.

18.

Also around December 2023, Plaintiff reported that a white technician, Blake Rutledge, broke a machine and refused to fix it. She complained to her TTL that she was working in a hostile and toxic work environment with Rutledge, a white employee who kept tearing up a machine without repercussions.

19.

Rutledge was not held accountable for his poor job performance. Rutledge would not complete his tasks in the downstream process but would not be punished. Instead, Plaintiff would be punished when the mistake appeared in the upstream process for which she was responsible, even though it was caused by Rutledge.

20.

Rutledge and other white employees are allowed to take substantially longer breaks than Plaintiff and other Black employees.

21.

Rutledge takes a one-hour break for every hour that he works.

22.

Plaintiff and other Black employees were reprimanded if they took breaks as long as Rutledge or other white employees.

23.

Plaintiff estimates that for a 12-hour shift, the average Black employee in East Plant works 10.5-11 hours, and that the average white employee in East Plant works 6-8 hours.

24.

White employees were paid the same amount of compensation as Black employees but were required to work less than Black employees for the same pay.

25.

Paying white and Black employees the same compensation for the same role, but requiring more work from Black employees, is a systemic problem within General Mills and occurs in more than one facility.

26.

Plaintiff complained to her supervisor that Rutledge created a hostile and toxic work environment and would stay on break way beyond what was permitted of Black employees. Nothing was done to punish Rutledge.

27.

Meanwhile, Plaintiff received reprimands for exceeding a 30-minute break and for not performing an audit when she was not even on the floor that day.

28.

Another common phenomenon is where white employees will leave the floor when there is work to do or a challenging expedient project arises. White employees at multiple General Mills' facilities are permitted to take breaks in excess of what is permitted by the employee handbook, even when there is work

to do, so Black employees are frequently left on the floor by themselves in violation of minimum technician policies.

29.

Yet another common phenomenon in General Mills' facility is that white employees refuse to train Black employees to the same degree as white employees. When white Level 5 technicians (who are supposed to be training lower level technicians) refuse to train Black employees, Defendant continues to hold the Black employees accountable for learning how to operate the machinery. Defendant has also recently stopped allowing technicians to get training by using overtime. As a result, Black employees are often required to get training from Level 2 technicians, who are not themselves always fully or accurately trained.

30.

A dangerous condition is created where more skilled white technicians are absent from the floor taking long breaks while Black employees who have not been sufficiently trained are left on the floor to operate machinery on their own in violation of General Mills' safety and other policies.

31.

In July 2024, Plaintiff suffered a left knee hyperextension injury at work.

32.

Plaintiff's disabling condition that arose from her work injury limits her ability to walk, run, bend, climb, crawl, and perform other personal and work functions.

33.

On October 29, 2024, Plaintiff reported to her TTL that she was being required to work in excess of her work restrictions.

34.

Disabled or injured white employees are frequently permitted to perform a light duty job involving an audit process on an iPad

35.

One of the audit iPad positions was available but, because of Plaintiff's race, she was not allowed to perform it. Instead, she was not allowed to continue performing her job duties.

36.

Plaintiff has not been permitted to return to work since on or about December 18, 2024.

## COUNT ONE

### Title VII:  Disparate Treatment/Discrimination (Race)

37.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

38.

Plaintiff is a member of a class protected by Title VII.

39.

Defendant is a covered employer under Title VII.

40.

Plaintiff was qualified for the job that she was performing at the time she suffered adverse employment actions, including being passed over for a less qualified white employee, being paid less for her work than the amount of compensation received by white employees, and not being permitted to continue to work where similarly situated white employees were given a light duty iPad job that allowed them to continue working.

41.

Plaintiff suffered an adverse employment action despite being qualified for her position.

42.

Plaintiff was treated less favorably than similarly situated employees outside of her protected class who were not subjected to hostility and toxicity of white employees and who were permitted to work light duty after suffering a work injury.

43.

Plaintiff's race was a motivating factor for the adverse employment actions taken against her.

44.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

45.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## **COUNT TWO**

### Title VII:  Retaliation (Race)

46.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

47.

Plaintiff is a member of a class protected by Title VII.

48.

Defendant is a covered employer under Title VII.

49.

Plaintiff engaged in a protected activity when she reported to her supervisor that a white employee was permitted to take substantially longer breaks than Black employees including herself and that he created a toxic work environment.

50.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against her, including reprimanding her and not allowing her to work light duty following a work injury.

51.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against her.

52.

Plaintiff asserts a retaliation claim pursuant to Title VII.

53.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT THREE

### Title VII:  Hostile Work Environment (Race)

54.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

55.

Plaintiff was required to perform more duties for the same amount of pay as white employees on the basis of race.

56.

Plaintiff was not permitted to take as frequent breaks as similarly situated white employees.

57.

Plaintiff was paid less for her work than similarly situated white employees for the amount of work they performed.

58.

The discriminatory statements and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

59.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

60.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

61.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

## COUNT FOUR

### Title VII:  Disparate Treatment/Discrimination (Sex)

62.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

63.

Plaintiff is a member of a class protected by Title VII.

64.

Defendant is a covered employer under Title VII.

65.

Plaintiff was qualified for the job that she was performing at the time she suffered adverse employment actions, including being passed not being permitted to continue to work where similarly situated male employees were given a light duty job involving an iPad to stay working.

66.

Plaintiff suffered an adverse employment action despite being qualified for her position.

67.

Plaintiff was treated less favorably than similarly situated employees outside of her protected class who were not subjected to hostility and toxicity of male employees and who were permitted to work light duty after suffering a work injury.

68.

Plaintiff's sex was a motivating factor for the adverse employment actions taken against her.

69.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

70.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT FIVE

### Title VII:  Retaliation (Sex)

71.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

72.

Plaintiff is a member of a class protected by Title VII.

73.

Defendant is a covered employer under Title VII.

74.

Plaintiff engaged in protected activity when she reported to her supervisor that a male employee was permitted to take substantially longer breaks than female employees including herself and created a toxic work environment.

75.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against her, including reprimanding her and not allowing her to work light duty following a work injury.

76.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against her.

77.

Plaintiff asserts a retaliation claim pursuant to Title VII.

78.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## **COUNT SIX**

### Title VII:  Hostile Work Environment (Sex)

79.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

80.

Plaintiff was required to perform more duties for the same amount of pay as male employees on the basis of sex.

81.

Plaintiff was not permitted to take as frequent breaks as similarly situated male employees.

82.

Plaintiff was paid less for her work than similarly situated male employees for the amount of work they performed.

83.

The discriminatory statements and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

84.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

85.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

86.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

## COUNT SEVEN

### 42 U.S.C. § 1981:  Race Discrimination

87.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

88.

Pursuant to the Civil Rights Act of 1866 –

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  This provision applies to nongovernmental discrimination.  *Id.* at § 1981(c).

89.

Plaintiff was passed over for a promotion in favor of a less-qualified white male on the basis of race.

90.

Plaintiff was not provided an honest answer about why a less-qualified white employee was selected for the open logistics role.

91.

Plaintiff was not provided the same amount of training as white employees.

92.

Plaintiff was required to perform more duties than white employees for the same amount of pay; therefore, Plaintiff was compensated at a lower rate than similarly situated white employees.

93.

Plaintiff asserts a disparate treatment claim pursuant to 42 U.S.C. § 1981.

94.

The actions by General Mills described in this Count amount to an ongoing and continuous violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

95.

Plaintiff is entitled to an award of damages against Defendant in an amount equal to all monetary and non-monetary losses she suffered.

## **COUNT EIGHT**

### 42 U.S.C. § 1981:  Retaliation

96.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

97.

Plaintiff engaged in a protected activity when she complained about a white employee creating a hostile and toxic work environment and that white employees were allowed to take longer breaks than Black employees.

98.

In retaliation for Plaintiff's complaints, Defendant took materially adverse actions against her, including reprimanding her and not allowing her to continue to work.

99.

Plaintiff asserts a retaliation claim pursuant to 42 U.S.C. § 1981.

## COUNT NINE

### 42 U.S.C. § 1981:  Hostile Work Environment

100.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

101.

Plaintiff was required to perform more duties for the same amount of pay as white employees on the basis of race.

102.

Plaintiff was not permitted to take as frequent breaks as similarly situated white employees.

103.

Plaintiff was paid less for her work than similarly situated white employees for the amount of work they performed.

104.

The discriminatory statements and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

105.

Plaintiff complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

106.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

107.

Plaintiff asserts a hostile work environment claim pursuant to § 1981.

## COUNT TEN

### Americans with Disabilities Act:  Disparate Treatment

108.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

109.

Plaintiff's disabling condition that arose from her work injury limits her ability to walk, run, bend, climb, crawl, and perform other personal and work functions.

110.

Plaintiff's July 2024 knee injury at work is a qualifying disability pursuant to the ADA.

111.

Defendant regarded Plaintiff as disabled.

112.

Plaintiff remained able to perform the essential functions of her job and/or was able to perform the essential functions of a light position involving an audit function with an iPad that was routinely offered to injured white employees.

113.

Defendant refused to engage in an interactive dialogue with Plaintiff about her work ability.  Instead, Defendant required Plaintiff to work in excess of her work restrictions and eventually no longer allowed her to continue to work.

114.

Plaintiff's disability actually motivated the decision to refuse to grant him an accommodation and to not allow her to continue to work.

115.

As a direct, legal, and proximate result of Defendant's violations of Plaintiff's rights under the ADA, she was and remains injured in an amount to be proven at trial.

116.

Defendant's actions were taken with malice or with reckless indifference to Plaintiff's federally protected rights.

117.

Defendant is liable to Plaintiff for all damages arising from its violations of her rights under the ADA in an amount to be proven at trial.

## COUNT ELEVEN

### Americans with Disabilities Act:  Failure to Accommodate

118.

All preceding paragraphs are incorporated as if fully restated herein.

119.

Plaintiff remained able to perform the essential functions of her Technician position but need an accommodation; Defendant refused to provide the same.

120.

Defendant refused to allow Plaintiff to continue to perform the essential functions of her Technician job or an accommodated position using an iPad that was routinely offered to injured white employees.

121.

As a direct, legal, and proximate result of Defendant's violations of Plaintiff's rights under the ADA, Plaintiff was and remains injured in an amount to be proven at trial.

122.

Defendant's actions were taken with malice or with reckless indifference to Plaintiff's federally protected rights.

123.

Defendant is liable to Plaintiff for all damages arising from its violations of her rights under the ADA in an amount to be proven at trial.

## COUNT TWELVE

### Americans with Disabilities Act:  Retaliation

124.

All preceding paragraphs are incorporated as if fully restated herein.

125.

Plaintiff engaged in statutorily protected conduct by requesting an accommodation.

126.

Plaintiff's statutorily protected conduct was a motivating factor for the adverse employment actions taken against her.

127.

As a direct, legal, and proximate result of Defendant's violations of Plaintiff's rights under the ADA, Plaintiff was and remains injured in an amount to be proven at trial.

128.

Defendant's actions were taken with malice or with reckless indifference to Plaintiff's federally protected rights.

129.

Defendant is liable to Plaintiff for all damages arising from its violations of her rights under the ADA in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a)    Declaratory judgment that General Mills violated Plaintiff's Title VII, § 1981, and ADA rights;

(b)    Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration, disbanding the Good Ole Boys, holding racist decisionmakers accountable, and implementing lawful employment practices that give Black employees the full benefit of employment at General Mills;

(c)    Full back pay from the date Plaintiff was no longer permitted to work taking into account all raises to which she would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)    Reinstatement or front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e)    Full amount of financial losses caused to Plaintiff as a result of the racist employment practices at the Covington facility;

(f)    Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(g)     Award of costs and expenses of this action, together with reasonable

attorney and expert fees;

(h)     Punitive damages in an amount to be determined by the enlightened

conscience of the jury sufficient to punish Defendant for its conduct

toward Plaintiff and deter Defendant from similar conduct in the

future;

(i)     Judgment against Defendant for damages incurred by Plaintiff;

(j)     Judgment against Defendant in an amount to fully and adequately

compensate Plaintiff;

(k)     An award of pre-judgment and post-judgment interest;

(l)     A trial by jury on all issues triable to a jury; and

(m)    Other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of February 2025.

*Signatures continued on following page.*

By:    /s/ Douglas H. Dean
       Georgia Bar No. 130988
       Attorney for Plaintiff
       Dean Thaxton, LLC
       601 E. 14th Avenue (31015)
       Post Office Box 5005
       Cordele, Georgia 31010
       T:  (229) 271-9323
       F:  (229) 271-9324
       E:  *doug@deanthaxton.law*

By:    /s/ Linda G. Carpenter
       Georgia Bar No. 111285
       Sharon L. Neal, Esq.
       Georgia Bar No. 536060
       Attorneys for Plaintiff
       The Brosnahan Law Firm
       31 Lenox Pointe, NE
       Atlanta, GA 30324
       T:  (404) 853-8964
       F:  (678) 904-6391
       E:  *lgc@brosnahan-law.com*
       E:  *sharon@brosnahan-law.com*